# Commonwealth *v.* Ignatavig, Appellant.

*Food law—Oleomargarine—Coloration—Act of May 29, 1901, P. L. 327.*

1. The Act of May 29, 1091, P. L. 327, which prohibits the sale and manufacture of oleomargarine "which shall be an imitation of yellow butter produced from pure unadulterated milk, or cream of the same, with or without coloring matter," applies to all butter made wholly from the milk of cows by the ordinary processes of manufacture having a yellow color, although that color may vary in degree, and whether the natural color, or a color artificially produced in imitation of the natural color. It is not to be confined to butter made in June which has a distinct yellow color, and which is known as "June butter" or "commercial butter."

2. On the trial of an indictment for violation of the act of May 29, 1901, where the defendant offers evidence to show that oleomargarine had necessarily a yellow tint, the commonwealth may introduce in evidence a package of white oleomargarine not only for the purpose of showing that oleomargarine is not necessarily yellow, but also as a standard of comparison with the oleomargarine bought from the defendant which was shown to have ingredients that would account for its yellow color.

3. In such a case an offer of a package of butter by the defendant as yellow butter is properly rejected where there is no offer to prove that such butter was the natural product of cream.

Argued Dec. 4, 1911. Appeal, No. 136, Oct. T., 1911, by defendant, from judgment of Q. S. Schuylkill Co., Jan. T., 1911, No. 13, on verdict of guilty in case of Commonwealth v. Alexander T. Ignatavig. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Affirmed.

Indictment for violation of the Act of May 29, 1901, P. L. 227, in selling oleomargarine colored yellow. Before BECHTEL, J.

At the trial the commonwealth offered under objection and exception various samples of oleomargarine, and of butter. [1–8]

The court refused under objection and exception to permit the defendant to introduce a sample of butter bought from Gimbel Brothers, without proving that it was made of cream. [9]

The court also refused under objection and exception to permit the defendant to show what was understood by the terms "yellow butter" and "commercial butter." [12–16]

The court charged in part as follows:

[It has been contended by counsel for the defense, to some extent, in fact quite earnestly, that yellow butter is meant to be what is known as commercial yellow butter; but we do not feel that we should place that construction upon the act unless a higher court says that we shall do so; because it can be readily understood that, if comparison was to be made with butter which contained any ingredient that gave it an artificial color, it would be hard to fix any standard with which to compare the oleomargarine, for the reason that we might have as many shades of butter as there could be shades of yellow coloring put into it.] [17]

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1–9, 12–16) rulings on evidence, quoting the bill of exceptions; (17) portion of charge as above, quoting it; (20) in refusing binding instructions for defendant.

*Thomas James Meagher,* with him *George· F. Brumm* and *William H. Wilson,* for appellant.

*Edgar W. Bechtel,* with him *Wm. F. Lyons,* district attorney, and *C. A. Snyder,* for appellee.

OPINION BY HENDERSON, J., March 1, 1912:

The charge against the defendant was that he sold oleo-

margarine which was not made and kept free from all coloration or ingredients causing it to look like yellow butter, in violation of the Act of May 29, 1901, P. L. 327. The fact of the sale was not denied, but the defendant contends that evidence was improperly introduced and that the statute was not correctly interpreted by the trial judge in the charge to the jury. The commonwealth offered as exhibits packages of oleomargarine alleged to have the color of yellow butter bought from the defendant and a package shown to have the natural color of oleomargarine. All of these samples were analyzed by a chemist in the service of the pure food division of the department of agriculture, and were admitted as exhibits in the case to show the color of the product sold by the defendant and the color of oleomargarine as it might be and was made without coloration or ingredients causing it to look like yellow butter. A sample of butter was offered to show the color of butter made from the cream of cows without the addition of any substance to affect its color. Objection was made to the introduction of the package of white oleomargarine because the question was not then raised whether oleomargarine could be made without some likeness in color to butter and to the sample of butter offered because it was made in the spring when the color of butter is light and the sample was not therefore a correct exhibit of the butter referred to in the act of assembly which the defendant contended was "June butter" or "commercial butter." The first eight assignments of error relate to these samples and may be considered together. The sale of the oleomargarine being admitted the question for the consideration of the jury was whether the thing sold looked like yellow butter, and while it was not necessary for the commonwealth at that stage of the proceedings to show that oleomargarine was manufactured which did not have this likeness it was not erroneous to permit proof of that fact when offered by the commonwealth in anticipation of testimony tending to show that a yellow color was an essential quality of oleomargarine.

At a later stage of the trial the defendant offered evidence to show that a yellow tint was inseparable from that product when manufactured from the constituents essential to its production, and the relevancy of evidence as to this sample was thus established. We do not wish to be understood as deciding that a successful defense could be maintained on proof that oleomargarine is necessarily yellow, but that was one of the facts alleged and evidence was offered by the defense to that effect and this the commonwealth might rebut. The sample was also admissible for the purpose of comparison by the jury between it and the packages bought from the defendant, one of which was shown to contain some butter and the other cottonseed oil, the presence of which would account, in part at least, for the color exhibited by the specimens. The offer of the package of butter was allowed to bring before the jury evidence of the natural color of butter and this evidence we regard as clearly admissible, if evidence were at all necessary to inform a jury of average intelligence what yellow butter looks like. The offer of the defendant to prove that a sample of butter obtained from Gimbel Brothers in Philadelphia was yellow butter was properly rejected. There was no offer to prove nor pretense that it was the natural product of cream and the jury would receive no light from the examination of such an exhibit. The yellow butter to which the act applies is butter made from the milk of cows and the imitation prohibited is likeness to that product. It was not sufficient to show that the article was regarded by the witness as yellow butter, and whether made from milk and whether artificially colored or not was not offered to be shown. One of the principal objects of the statute as was stated by President Judge RICE in Com. v. Mellet, 27 Pa. Superior Ct. 41, 50, was "to prevent the sale of oleomargarine, which, by reason of the addition of coloring matter, or of the selection or treatment or combination of its component parts, is made to resemble and be in imitation of yellow butter." It was not the purpose to fix as a standard butter highly

colored artificially nor something which may not have been in fact pure butter.   The 14th, 15th, 16th and 17th assignments relate to evidence bearing on the meaning of the words "yellow butter" and the effort of the defendant to show what was known in the market as "yellow butter." The only market referred to was the Philadelphia market and the proposal was to show what the color "yellow" is as applied to commercial butter.   These offers were overruled by the court for the reason that the act has reference to the color of butter that is made exclusively from milk or cream without the addition of any ingredient to give it any other color than its natural color—the color derived from the ingredients used to make what is known as unadulterated butter.   Opportunity was given to prove the color of butter made at the time of trial or at any other time of year, but the defense was limited to the natural color, not that produced by the addition of some ingredient for the purpose of producing color.   In so ruling the court was obviously in harmony with the spirit and purpose of the statute.   It is within the power of the legislature to wholly prohibit the sale of oleomargarine as was done by the act of May 21, 1885, P. L. 22, and if to prohibit, certainly to regulate.   It may be that the regulation referred to embarrasses manufacturers of and dealers in this class of goods, but that is a legislative consideration. It was evidently the belief of the lawmaking body that this provision and others incorporated into the statute were necessary to prevent deception and it is not for the court to hold that this was a mistaken conception.   Evidence was in the case that natural butter has a color known as "butter yellow" and that it is yellow all the year around; that depth of color varies somewhat but that in the ordinary processes of manufacture it has a distinctive yellow color, and this is what the defendant's oleomargarine imitated.   The court submitted the case with instructions as favorable to the defendant as the facts would permit. Attention was called to the evidence that butter in May, June and July has a distinct yellow color known as yellow

butter and that this is the color that the legislature intended that oleomargarine should not possess—that is, the color of yellow butter.   This we think limited the commonwealth to proof of a higher degree of color than is required by the statute and to that extent was favorable to the defendant.   We have considered the words "yellow butter" as used in the statute in Com. v. Clewell, ante, p. 389, decided at this term, and what was there said need not be now repeated.   Our conclusion was that the prohibition of the statute applied to all butter made wholly from the milk of cows by the ordinary processes of manufacture having a yellow color although that color might vary in degree and whether the natural color or a color artificially produced in imitation of the natural color. The jurors saw the oleomargarine which the defendant sold; they saw a sample of white oleomargarine; they heard the testimony of one of the defendant's witnesses from whom he purchased the oleomargarine that a yellow tint inhered in all oleomargarine, and they saw a sample of pure butter made about the time of the trial.   They brought into exercise their own sense, as well, and on the evidence convicted the defendant.

We do not find any reversible error in the proceeding and therefore affirm the judgment and remit the record to the court below to the end that the sentence may be carried into effect.